IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ERIC QUALLS<br>3268 Earncliff Drive<br>Columbus, Ohio 43219,<br><br>        Plaintiff,<br><br>        v.<br><br>THE ANTHEM COMPANIES, INC.<br>8940 Lyra Drive, Suite 300<br>Columbus, Ohio 43240<br><br>    **Serve Also:**<br>    The Anthem Companies, Inc.<br>    c/o CT Corporation System<br>    4400 Easton Commons Way, Suite 125<br>    Columbus, Ohio 43219<br><br>        Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO.<br><br>JUDGE:<br><br><br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED HEREIN** |

Plaintiff, Eric Qualls, by and through undersigned counsel, as his Complaint against Defendant The Anthem Companies, Inc., states and avers the following:

## PARTIES AND VENUE

1. Qualls is a resident of the city of Columbus, Franklin County, Ohio.

2. At all times herein, Qualls was acting in the course and scope of his employment.

3. Anthem is a foreign corporation that does business at 8940 Lyra Drive, Suite 300, Columbus, Delaware County, Ohio 43240.

4. Anthem is and, at all times herein, was an employer within the meaning of R.C. § 4112.01 *et seq*.

5. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Qualls is alleging a Federal Law Claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e.

6. All material events alleged in this Complaint occurred in Franklin and/or Delaware Counties, Ohio.

7. This Court has supplemental jurisdiction over Qualls's state law claims pursuant to 28 U.S.C. § 1367 as Qualls's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

9. Within 300 days of the conduct alleged below, Qualls filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2021-01420 against Anthem ("Qualls EEOC Charge").

10. Qualls dually filed the Qualls EEOC Charge with the EEOC and the Ohio Civil Rights Commission.

11. On or about May 17, 2021, the EEOC issued a Notice of Right to Sue letter to Qualls regarding the Qualls EEOC Charge.

12. Qualls received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

13. Qualls has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

14. Qualls has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

15. On or about December 31, 2019, Qualls began working for Anthem.

16. Qualls is African American.

17. Qualls is male.

18. Anthem employed Qualls as a community relations consultant.

19. Elizabeth Billman was health promotion manager for Anthem.

20. Billman was Qualls's direct superior.

21. Billman is Caucasian.

22. Billman is female.

23. Billman was not involved in the decision to hire Qualls.

24. During Qualls's employment with Anthem, Qualls was the only African American man who reported directly to Billman.

25. During Qualls's employment with Anthem, Qualls was the only male community relations consultant.

26. Billman treated Qualls poorly compared to his similarly-situated female and non-African-American coworkers ("Disparate Treatment").

27. Among the Disparate Treatment, Billman micromanaged Qualls's work, but not Qualls's similarly-situated coworkers' work.

28. Among the Disparate Treatment, Billman communicated with Qualls in a hostile manner, but did not treat Qualls's similarly-situated coworkers the same way.

29. In or about February 2020, Qualls reported the Disparate Treatment to Dewan Gibson ("First Report of Discrimination").

30. Gibson was a manager at Anthem.

31. In the First Report of Discrimination, Qualls shared an email Billman sent to him, to show Gibson the hostile manner in which Billman communicated with him.

32. In the First Report of Discrimination, Qualls opposed race discrimination.

33. In the First Report of Discrimination, Qualls opposed gender discrimination.

34. In or about February 2020, Billman learned that Qualls made the First Report of Discrimination.

35. Billman aggressively told Qualls she was displeased that Qualls made the First Report of Discrimination.

36. Telling Qualls that she was displeased that Qualls made the First Report of Discrimination was an adverse action.

37. In or about March 2020, Billman gave Qualls a negative performance evaluation ("Negative Evaluation").

38. In the Negative Evaluation, Billman gave Qualls a worse evaluation than any other employee in the department.

39. The Negative Evaluation did not contain any quantitative metrics.

40. The Negative Evaluation was entirely subjective.

41. The Negative Evaluation was an adverse action.

42. The Negative Evaluation was an adverse employment action.

43. Billman gave Qualls the Negative Evaluation intentionally.

44. Billman gave Qualls the Negative Evaluation willfully.

45. Billman gave Qualls the Negative Evaluation because of his race.

46. Billman gave Qualls the Negative Evaluation because of his gender.

47. Billman gave Qualls the Negative Evaluation in retaliation for his opposing discrimination.

48. In or about April 2020, Billman told Qualls that there are a lot of neo-Nazis in her hometown.

49. In or about April 2020, Billman told Qualls that her community was unhappy that Puerto Ricans moved into her town.

50. Qualls did not ask Billman about race relations in her hometown.

51. Billman told Qualls about neo-Nazis and Puerto Ricans in her hometown for the purpose of signaling to Qualls that she did not like racial minorities.

52. Billman told Qualls about neo-Nazis and Puerto Ricans in her hometown because of his race.

53. On or about May 19, 2021, Qualls submitted a request for a waiver to seek a position in a different department ("Reassignment Request").

54. Qualls submitted the Reassignment Request because of the Disparate Treatment.

55. Qualls submitted the Reassignment Request because of the retaliation he was facing from Qualls.

56. On or about October 22, 2020, Anthem terminated Qualls's employment ("Termination").

57. The Termination was an adverse employment action.

58. The Termination was an adverse action.

59. On or about October 22, 2020, Billman and Human Resources Representative Jess Measley informed Qualls about the Termination via video call ("Termination Call").

60. In the Termination Call, Billman and Measley alleged that the reason for the Termination was that Qualls falsified a log of the calls he made ("Stated Reason").

61. Qualls did not falsify a log of the calls he made.

62. Anthem did not conduct an investigation about allegations that Qualls falsified a log of the calls he made.

63. Anthem did not give Qualls an opportunity to participate in an investigation about allegations that Qualls falsified a log of the calls he made.

64. The Stated Reason had no basis in fact.

65. The Stated Reason was not the real reason for the Termination.

66. The Stated Reason was pretextual.

67. Anthem has a progressive disciplinary policy ("Discipline Policy").

68. A verbal warning is the lowest level of discipline in the Discipline Policy.

69. Qualls did not receive a verbal warning before the Termination.

70. A written warning is a higher level of discipline than a verbal warning in the Discipline Policy.

71. Qualls did not receive a written warning before the Termination.

72. A termination is the highest level of discipline in the Discipline Policy.

73. Anthem knowingly skipped progressive disciplinary steps in terminating Qualls.

74. Anthem knowingly terminated Qualls's employment.

75. Anthem knowingly took an adverse employment action against Qualls.

76. Anthem knowingly took an adverse action against Qualls.

77. Anthem intentionally skipped progressive disciplinary steps in terminating Qualls.

78. Anthem intentionally terminated Qualls's employment.

79. Anthem intentionally took an adverse employment action against Qualls.

80. Anthem intentionally took an adverse action against Qualls.

81. Anthem knew that skipping progressive disciplinary steps in terminating Qualls would cause Qualls harm, including economic harm.

82. Anthem knew that terminating Qualls would cause Qualls harm, including economic harm.

83. Anthem willfully skipped progressive disciplinary steps in terminating Qualls.

84. Anthem willfully terminated Qualls's employment.

85. Anthem willfully took an adverse employment action against Qualls.

86. Anthem willfully took an adverse action against Qualls.

87. On or about October 22, 2020, Anthem terminated Qualls's employment because of his race.

88. On or about October 22, 2020, Anthem terminated Qualls's employment because of his gender.

89. On or about October 22, 2020, Anthem terminated Qualls's employment because he opposed discrimination.

90. As a direct and proximate result of Anthem's conduct, Qualls suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT I: GENDER DISCRIMINATION IN VIOLATION OF TITLE VII

91. Qualls restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

92. Qualls is a member of a statutorily protected class based on his gender under Title VII.

93. Anthem treated Qualls differently than other similarly-situated employees based on his gender.

94. Anthem discriminated against Qualls on the basis of his gender throughout his employment with the company.

95. Anthem terminated Qualls's employment without just cause.

96. Anthem terminated Qualls's employment based on his gender.

97. Anthem's discrimination against Qualls based on his gender violates Title VII.

98. As a direct and proximate result of Anthem's conduct, Qualls suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT II: GENDER DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

99. Qualls restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

100. Qualls is a member of a statutorily protected class based on his gender under R.C. § 4112.02.

101. Anthem treated Qualls differently than other similarly-situated employees based on his gender.

102. Anthem discriminated against Qualls on the basis of his gender throughout his employment with the company.

103. Anthem terminated Qualls's employment without just cause.

104. Anthem terminated Qualls's employment based on his gender.

105. Anthem's discrimination against Qualls based on his gender violates R.C. § 4112.01 *et seq.*

106. As a direct and proximate result of Anthem's conduct, Qualls suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT III: RACE DISCRIMINATION IN VIOLATION OF TITLE VII

107. Qualls restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

108. Throughout his employment, Qualls was fully competent to perform his essential job duties.

109. Anthem treated Qualls differently than other similarly-situated employees based on his race.

110. Anthem violated Title VII by discriminating against Qualls due to his race.

111. On or about October 22, 2020, Anthem terminated Qualls without just cause.

112. At all times material herein, similarly-situated non-African-American employees were not terminated without just cause.

113. Anthem terminated Qualls based on his race.

114. Anthem violated Title VII when it terminated Qualls based on his race.

115. As a direct and proximate result of Anthem's conduct, Qualls has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT IV: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

116. Qualls restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

117. Throughout his employment, Qualls was fully competent to perform his essential job duties.

118. Anthem treated Qualls differently than other similarly-situated employees based on his race.

119. Anthem violated R.C. § 4112.02(A) *et seq.* by discriminating against Qualls due to his race.

120. On or about October 22, 2020, Anthem terminated Qualls without just cause.

121. At all times material herein, similarly-situated non-African-American employees were not terminated without just cause.

122. Anthem terminated Qualls based on his race.

123. Anthem violated R.C. § 4112.01 *et seq.* when it terminated Qualls based on his race.

124. As a direct and proximate result of Anthem's conduct, Qualls has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT V: RETALIATION IN VIOLATION OF TITLE VII

125. Qualls restates each and every prior paragraph of this complaint, as if it were fully restated herein.

126. As a result of Anthem's discriminatory conduct described above, Qualls complained about the discrimination he was experiencing.

127. Subsequent to Qualls's reporting of discrimination, Billman scolded Qualls for making the First Report of Discrimination.

128. Subsequent to Qualls's reporting of discrimination, Billman gave Qualls the Negative Evaluation.

129. Subsequent to Qualls's reporting of discrimination, Anthem terminated Qualls's employment.

130. Anthem's actions were retaliatory in nature based on Qualls's opposition to the unlawful discriminatory conduct.

131. Pursuant to Title VII, it is an unlawful discriminatory practice to retaliate against an employee for opposing discrimination.

132. As a direct and proximate result of Anthem's conduct, Qualls suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT VI:  RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

133. Qualls restates each and every prior paragraph of this complaint, as if it were fully restated herein.

134. As a result of Anthem's discriminatory conduct described above, Qualls complained about the discrimination he was experiencing.

135. Subsequent to Qualls's reporting of discrimination, Billman scolded Qualls for making the First Report of Discrimination.

136. Subsequent to Qualls's reporting of discrimination, Billman gave Qualls the Negative Evaluation.

137. Subsequent to Qualls's reporting of discrimination, Anthem terminated Qualls's employment.

138. Anthem's actions were retaliatory in nature based on Qualls's opposition to the unlawful discriminatory conduct.

139. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

140. As a direct and proximate result of Anthem's conduct, Qualls suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Qualls respectfully requests that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

    (i) Requiring Anthem to abolish discrimination, harassment, and retaliation;

    (ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

    (iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    (v) Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring Anthem to restore Qualls to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(c) An award against Defendant of compensatory and monetary damages to compensate Qualls for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Qualls claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)
**THE SPITZ LAW FIRM, LLC**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
Email: paul.filippelli@spitzlawfirm.com
*Attorneys for Plaintiff Eric Qualls*

## JURY DEMAND

Plaintiff Qualls demands a trial by jury by the maximum number of jurors permitted.

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)